IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STYLA Y. CARTER, | ) | CASE NO. 5:14CV2691 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| HICKORY HEALTHCARE INC., *d/b/a* | ) | |
| *Hickory Ridge Nursing and Rehabilitation Center*, | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

In prior Orders, the Court has ruled that an award of attorney fees and costs should be made against plaintiff's counsel in favor of defendant pursuant to 28 U.S.C. § 1927 and has referred to the undersigned the question of the amount of fees and costs to be awarded. Docs. 118 and 130. The matter has been fully briefed. Docs. 131, 134. For the reasons set forth below, the undersigned **ORDERS** plaintiff's counsel Edward L. Gilbert ("Gilbert") to pay defendant Hickory Healthcare Inc. the sum of $25,995.32 as fees and costs.

## I. Background

The factual and procedural background of this case has been detailed extensively by the Court in prior orders and thus will be presented here only in summary form. *See, e.g.*, Docs. 112, 118, 130.

This case was filed on December 9, 2014, under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA") and the corresponding Ohio statute. Defendant filed an Answer in which it alleged, *inter alia*, that the Complaint was time-barred (Doc. 6); it did not file a Motion to Dismiss. During 2015, the parties engaged in discovery. Discovery was contentious. *See, e.g.*, Memorandum Opinion and Order of 7/29/16, Doc. 118, p. 3 ("Generally

1

speaking, it would not be an exaggeration to state that both sides persisted in opposing any action of the other side."). In June 2015, the parties participated in a mediation with the undersigned but did not resolve the case.

On September 22, 2015, defendant filed a Motion for Summary Judgment in which it argued that the case was time-barred. Doc. 83. The principal issue disputed on the motion was whether plaintiff qualified for equitable tolling of the 90-day period during which she was required to sue after the Equal Employment Opportunity Commission issued her a right to sue letter. *See* Doc. 83, 103, and 104. On November 18, 2015, the undersigned issued a Report and Recommendation ("R&R") recommending that the motion for summary judgment be granted. Doc. 110. The following day, plaintiff filed a notice indicating that she did not intend to appeal (object to) the R&R but noting her position that the facts of this case differed from cases cited as precedent. Doc. 111. On November 23, 2015, the Court adopted the R&R and entered judgment dismissing the case as time-barred. Doc. 112 and 113.

**The Motion for Attorney Fees**

Shortly after the Court issued its summary judgment ruling, defendant filed its motion for attorney fees and costs. Doc. 114.[1] On July 29, 2016, the Court issued a Memorandum Opinion and Order (the "7/29/16 MOO") granting defendant's motion under 28 U.S.C. § 1927 but denying the motion to the extent it sought an award under Fed. R. Civ. P. 11 and 54 and 42 U.S.C. §§ 2000e-5(k) and 12205. Doc. 118. On October 5, 2016, the Court issued a Memorandum Opinion and Order (the "10/5/16 MOO") in which it granted plaintiff's motion for reconsideration but determined on reconsideration that its July 29, 2016, ruling would stand.

---

[1] Defendant earlier had asked the Court to find that plaintiff's counsel violated Fed. R. Civ. P. 11 when he filed the Complaint because the case was filed after the 90-day period set forth in 42 U.S.C. § 2000e-5(f)(1). Doc. 90. In its ruling on summary judgment, the Court determined that Rule 11 sanctions were not available due to defendant's failure to follow the procedure set forth in that Rule; the Court also denied the Rule 11 motion as moot in light of the summary judgment ruling. Doc. 112, p.4.

2

Doc. 130. The Court made clear that the award of fees and costs is to be paid by plaintiff's counsel (Gilbert) rather than by plaintiff (Doc. 130, p. 2 n.3) and referred to the undersigned for final determination the question of the amount of attorney fees and costs to be awarded. Doc. 130, p. 7.[2]

Following the Court's ruling on reconsideration, defendant has filed a brief requesting that fees and costs be awarded in the amount of $76,206.07. Doc. 131. Defendant supports its request with a declaration of its counsel to which is attached an exhibit consisting of copies of invoices covering the time period December 23, 2014 (shortly after the case was filed), through August 19, 2016. Each invoice contains entries by date, with each entry providing a description of work performed, the name of the individual who performed the work, the time spent on each task, and the resultant fees billed to defendant. Doc. 131-2 (hereinafter, "invoices"). In addition, defendant seeks attorney fees incurred in October 2016 that had not been yet been invoiced as of October 19, 2016. Doc. 131-1, p. 3, ¶5. Gilbert has filed an opposition brief accompanied by appendices consisting of lists on which invoiced entries that Gilbert objects to are copied, each list being based on a specific ground for objection.[3] Doc. 134.

## II. Analysis

### A. The Date from Which the Fee Award Runs

Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

---

[2] The Court encouraged counsel to "use their best efforts to mutually agree upon an appropriate award so as to avoid both the need for the magistrate judge to decide and the need for any appeal. This matter should be put to rest as amicably as possible and everyone should move on." Doc. 30, p. 7. Unfortunately, counsel have reported that they are unable to resolve the matter by agreement.

[3] Some invoice entries appear on more than one list because plaintiff's counsel objects to them for more than one reason.

3

The first determination the undersigned is required to make is the date from which the fee award runs. An attorney may be sanctioned under § 1927 from "the point in time when the attorney's pursuit of . . . claims became unreasonable and vexatious." *Garner v. Cuyahoga Cnty. Juvenile Court*, 554 F.3d 624, 646 (6th Cir. 2009).

In the 7/29/16 MOO as well as in the 10/5/16 MOO, the Court stressed that its determination that a fee award is appropriate was influenced by the fact that plaintiff's counsel failed to abandon (dismiss) the case after being provided by defendant's counsel with "convincing" case law indicating that the doctrine of equitable tolling would not apply to rescue plaintiff's claims. 7/29/16 MOO, Doc. 118, pp. 6, 9; 10/5/16 MOO, Doc. 130, pp. 3, 4 n.6, and 6. The Court cited two cases that were also cited in the R&R that recommended that defendant's motion for summary judgment be granted. 7/29/16 MOO, p. 6.[4]

Based on the Court's reasoning in the 7/29/16 and 10/5/16 MOOs, the undersigned finds that plaintiff counsel's pursuit of the case became unreasonable and vexatious, and the fee award should run, from the date when defendant's counsel advised Gilbert of such case law. That date was September 15, 2015, according to the affidavits of defendant's counsel submitted with its motion for an award of attorney fees and costs. *See* Affidavit of attorney Scott Salsbury, Doc. 114-1, ¶¶ 1-2, (attaching letter emailed on September 15, 2015 (Doc. 114-2) in which Salsbury advised Gilbert of the two cases). Defendant does not claim to have identified any case law relating to the time bar issue before September 15, 2015; rather, it claims only to have stated that plaintiff's case was time-barred. *See* Affidavit of attorney Sue Ellen Salsbury,[5] Doc. 114-8, p. 1,

---

[4] *Pearison* v. *Pinkerton's, Inc.*, 90 F. App'x 811 (6th Cir. 2004) and *Mayes v. University of Toledo*, 2015 WL 521111 (N.D. Ohio Feb. 9, 2015).

[5] Attorney Sue Ellen Salsbury represented defendant at the Case Management Conference on February 19, 2015, and during the mediation on June 18, 2015. Attorney Scott Salsbury took the lead role in representing defendant only after the mediation.

4

¶¶1 and 2 (stating that defendant notified the Court and Gilbert during the CMC that defendant believed that plaintiff's claim was time-barred and reiterated to Gilbert during the mediation that plaintiff's claim was time-barred since it was filed after the applicable limitations period). *See also* defendant's Motion for an Award of Attorney Fees and Costs, Doc. 114, p. 3, ¶4 (indicating that at the Case Management Conference defendant "noted" and, during the mediation it "reiterated," that plaintiff's claim was time-barred).

### B. Calculating the lodestar amount

For the reasons set forth above, fees and costs will be awarded for the period <u>after</u> September 15, 2015. Defendant's affidavit and invoices show that it incurred $39,802.57 in fees and costs after that date.[6]

"The party seeking fees bears the burden of showing that they are reasonable." *Howe et al. v. City of Akron*, Case No. 5-06-cv-2779, Doc. 820, pp. 17-19; 2016 WL 916701, at *5 (N.D.Ohio March 10, 2016) (Lioi, J). Courts use the "lodestar" method to determine what is a reasonable attorney fee. *Studio A Entm't, Inv. V. Action DVD*, 658 F.Supp.2d 851, 856-857 (N.D.Ohio 2009) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). The lodestar amount is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. "There is a strong presumption that the lodestar figure is reasonable." *Studio A Entm't, Inv., supra,* 658 F. Supp. 2d 856-857 (internal quotation marks and citation omitted).

**1. Reasonable rates**

---

[6] $39,802.57 represents $36,567.57 from the invoices (Doc. 131-2, pp. 34-39) and $3,235.00 from Salsbury's Declaration, in which he lists five additional entries for work performed in October 2016 that had not yet been invoiced (Doc. 131-1, p. 3).

Defendant seeks an hourly rate of $230 for work performed by its lead counsel, Scott Salsbury ("Salsbury"). Salsbury has submitted a Declaration stating that he has been litigating cases since 1990 (26 years as of the filing of the Declaration), that he is the principal of the law firm Salsbury & Salsbury, LPA, and that he routinely handles employment claims such as the claims in this case. Doc. 131-1, pp. 1-2, ¶¶ 1-3. In further support of his request for $230 an hour, he cites to the Ohio State Bar Association's publication, Economics of the Law Practice in Ohio in 2013, which lists the median billable rate for attorneys in the field of "employment law (management)" as $250/hr. Doc. 131-1, p. 2, n. 1.[7] The one page of that publication attached to Salsbury's Declaration shows average hourly billing rates in Ohio for attorneys in the field of "employment law (management)"; it does not state average hourly billing rates for attorneys in the Akron area. Doc. 131-3.

As Gilbert points out, courts generally look to average billing rates in the relevant geographical location, not in the entire state. *See, e.g., Howe et al. v. City of Akron*, *supra*, 2016 WL 916701, at *9 (N.D.Ohio March 10, 2016) (explaining that the court relies on the average hourly rate in the local geographical area, i.e., Akron, Ohio, rather than on national or state-wide averages). The undersigned has calculated the difference in the median hourly billing rate between all attorneys in the State of Ohio (as shown by the publication cited by defendant) and attorneys in Akron and, based on that calculation, concludes that Salsbury's requested hourly rate of $230/hr. is below the median billing rate for employment law (management) attorneys in the Akron area.[8] Therefore, Salsbury's billable rate of $230/hr. is reasonable.

---

[7] Salsbury cites Judge Lioi's Memorandum Opinion and Order in *Howe et al. v. City of Akron*, Case No. 5-06-cv-2779, Doc. 820, pp. 17-19; 2016 WL 916701, at *9 (N.D.Ohio March 10, 2016) for the proposition that courts routinely rely upon the Economics of the Law Practice in Ohio. Doc. 131-1, p. 2 n.1.

[8] *See* https://www.ohiobar.org/ForLawyers/MemberResources/MemberDiscounts/Documents/OSBA_EconofLawPracticeOhio.pdf (last visited 4/10/2017) (hereinafter "Economics of Law"). The median hourly rate for Akron attorneys ($200) is 96.62% of the median Ohio billing rate ($207). The median Ohio billing rate for employment law (management) is $250; 96.62% of $250 is $242.30/hr. *See id*., p. 39.

Three other attorneys also performed work for defendant on this case after September 15, 2015: Ernie Pisanelli ($200/hr.), Beau Thompson ($150/hr.), and Nathan Kott ($175/hr.). *See* Doc. 131, p. 7; 131-2, pp. 2-3. Salsbury's Declaration asserts that Pisanelli has over 20 years litigating in the health care industry; Thompson is a recent law school graduate; and Kott has almost 10 years of legal experience. Doc. 131-2, pp. 2-3.

Pisanelli and Kott: The hourly rates for Pisanelli and Kott are reasonable, being at or below the median rate for practicing lawyers in the Akron area with their years of experience (20 years and 10 years, respectively) and areas of practice (health care industry, general).

Thompson: Thompson was admitted to practice law in Ohio on November 16, 2015; his work performed in this case after that date is, therefore, properly billed at a lawyer's rate.[9] Work performed by Thompson prior to that date is not properly billed at a lawyer's rate.[10] Thompson's requested rate as a lawyer of $150/hr. is slightly higher than the average in the Akron area for a recent law school graduate; his hourly rate, therefore, has been reduced to $145/hr.[11]

Law clerk: Work was also performed by a law clerk in this case, identified as a law school student, and billed at $100/hr. Doc. 131, p. 7; 131-1, p. 3. Information regarding a reasonable rate for law clerks is not included in the Economics of Law. Case law in this district has awarded law clerks in the Akron area an hourly rate of $90/hr. during the same time period that the work in this case was performed. *See Howe*, 2016 WL 916701, at *10 (awarding fees

---

[9] *See* http://www.supr emecourt.ohio.gov/AttySvcs/AttyReg/Public_ AttorneyInformation.asp. *See also State Farm Fire & Casualty Co. v. Rowland Plumbing, Ltd.*, Case No. 5:11-cv-316, 2013 WL 5442303, at *2 (N.D.Ohio Sept. 27, 2013) (Lioi, J) (independently verifying public information regarding attorney admission date on the Ohio Supreme Court's website).

[10] Thompson's only billable hours for work performed prior to his bar admission are deducted for the reasons described in the section discussing time spent fixing defendant's counsel's own errors, *infra*.

[11] The median Ohio rate for a law graduate with 1-2 years experience is $150. 96.62% (the Akron-based percentage) of $150 is $144.93/hr. *See* note 8, *supra*; Economics of Law, p. 39.

for law clerk work performed during 2011-2016 at $90/hr.). Accordingly, the undersigned finds that $90/hr. is a reasonable rate for work performed by a law clerk in this case.

In sum, the following hourly rates are reasonable and will apply to the fee award in this case:

| | |
|---|---|
| Scott Salsbury: | $230 |
| Ernie Pisanelli: | $200 |
| Nathan Kott: | $175 |
| Beau Thompson: | $145 |
| Law clerk: | $90 |

**2. Reasonable hours**

The total number of hours defendant's invoices show were billed in this action after September 15, 2015, is 180.75, and Salsbury's declaration lists another 16.5 hours, for a total of 197.25 hours. *See* Doc. 131-2, pp. 24-39; Doc. 131-1, p. 3. "Counsel ... should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434. Gilbert advances a number of objections to the number of hours defendant's counsel spent on this case, some of which are persuasive.

**a. Duplicative and unnecessary work**

Gilbert argues that Salsbury billed for duplicative and unnecessary work. Doc. 134, p. 10. The undersigned agrees in part.

<u>Researching the time-bar issue</u>: Gilbert argues that defendant's counsel continued to research whether the case was time-barred even after it filed its motion for summary judgment asserting that the case was time-barred. Doc. 134, p. 4. A review of the only entries Gilbert identifies that are dated after September 15, 2015, shows that the time was devoted to the time bar issue insofar as it related to sanctions, e.g., facts regarding what Gilbert knew or should have

8

known regarding the time bar issue. *See* Doc. 131-2, p. 26 (9/18/2015 entry for research refuting plaintiff's argument that her attorney was required to receive notice of her Right to Sue letter and research for evidence required to show a frivolous claim to recoup attorney fees); p. 33 (entry dated 11/3/2015 for time spent "discover[ing] original Right to Sue Letter" and "determin[ing] that Employer receipt of RTS evidences [plaintiff's] receipt and inquire with client and client's former counsel for personal knowledge of receiving RTS"). Thus, the time spent researching the time bar issue was directed towards evidence showing that Gilbert knew his client's case was time-barred in order to recover attorney fees, not researching whether this case was, in fact, time barred. Defendant is entitled to recover these fees, although, as discussed more fully below, the amount of fees will be reduced.

<u>Proceeding with discovery</u>: Gilbert complains that, despite knowing this case was time-barred, Salsbury spent time pursuing additional discovery that was beyond the scope of the time-bar issue. Doc. 134, pp. 5, 14. Gilbert's complaint is not well founded for three reasons. First, the cost of additional discovery in this case would have been eliminated entirely had Gilbert dismissed this lawsuit when he knew or should have known that it was time-barred. Second, discovery was not stayed pending the Court's ruling on summary judgment and the parties were under a deadline for completing fact discovery. It was not unreasonable, therefore, for defendant to continue to defend itself in this lawsuit by participating in the normal course of discovery. Lastly, although Gilbert alleges that defendant could have filed an earlier motion to dismiss this case as time-barred based on Federal Rule of Civil Procedure 12(b)(6) (Doc. 134, p. 5), the undersigned declines to second-guess defendant's strategy or thinking regarding the wisdom of filing a motion to dismiss. The undersigned is not convinced that a Rule 12(b)(6) motion would have been the proper channel to raise a statute of limitations argument given the information

9

relied upon by the parties on summary judgment that was outside the pleadings.[12] Moreover, even if defendant had filed a Rule 12(b)(6) motion, it is unlikely that the Court would have stayed discovery pending a ruling. In other words, defendant would have had to continue to defend itself through the normal course of discovery even had it filed a motion to dismiss.

### b. Insufficient detail and block billing

Gilbert argues that Salsbury did not particularize his invoices with sufficient detail regarding the work performed and thus engaged in "block billing," i.e., lumping together time entries under one total. Doc. 134, pp. 12-13. The undersigned disagrees.

A party seeking attorney fees must provide documentation in support of the hours counsel charged comprised of "sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle v. Reliance Medical Prods*., 515 F.3d 531, 553 (6th Cir. 2008) (quotation marks and citation omitted). "Although counsel need not record in great detail each minute he or she spent on an item, the general subject matter should be identified." *Id*. (internal quotation marks and citations omitted).

Gilbert finds fault with five entries in the invoices dated after September 15, 2015 (Doc. 134, p. 12; Doc. 134-7, p. 3 (Gilbert's list of items he believes were inadequately documented or block-billed)). The first entry, dated September 17, 2015, is not lacking in detail: of the 2 hours billed, one hour was spent reviewing plaintiff's employment records to determine whether she enrolled in her employer's healthcare program (which was relevant to her out-of-pocket medical expenses claimed as damages); and one hour was spent on continued efforts to reset Dr.

---

[12] *See Mayes*, 2015 WL 521111, at *2-3 (excluding evidence presented that was outside the pleadings relevant to whether the plaintiff's case was time-barred when ruling on the defendant's motion brought pursuant to 12(b)(6)); *Pearison*, 90 Fed. App'x 811, 812 (affirming district court's order finding in favor of the defendant after converting the defendant's motion to dismiss the case as time-barred to a motion for summary judgment in light of evidence outside the pleadings).

Bouchard's deposition after it was cancelled.  This is sufficient detail.  The next entry is 1.5 hours spent by the law clerk reviewing the proposed stipulated protective order provided by Gilbert and comparing it to the Northern District of Ohio's requirements.  This is sufficient detail.  The third entry is dated October 2, 2015, and is a half-hour spent editing and filing a "motion to reserve the depositions of [plaintiff's] doctors."  This is sufficient detail.  *See also* Doc. 88 (defendant's motion, filed October 2, 2015, to suspend scheduling the depositions of plaintiff's doctors).

The fourth entry is 1.5 hours spent "continu[ing] efforts to set depositions of Drs. Bouchard and Amanambu: numerous telephone calls to Christina Colosimo and Alicia Menho and email to confirm they will provide potential deposition dates; email Eddie Sipplen, attorney for Dr. Amanambu, requesting potential deposition dates."[13]  This is sufficient detail.  The fifth and last entry posted after September 15, 2015, that Gilbert objects to on the basis that it lacks sufficient detail is one dated October 16, 2015, for 1.5 hours spent by the law clerk that states, "draft Joint Notice for deposition of Dr. Amanambu and correspond with Opposing Counsel re: revisions."  This is sufficient detail.  *See also* Doc. 100 (joint notice filed by defendant on October 16, 2015, informing the Court of the scheduled deposition date for Dr. Amanambu).

In conclusion, none of the five entries identified by Gilbert discussed above is insufficiently detailed.  Salsbury identified the general subject matter and was not required to record in great detail each minute he or others spent on an item.  *See Hensley*, 461 U.S. at 437, n. 12; *Imwalle*, 515 F.3d at 553.  Moreover, the entries were recorded contemporaneously with the timeline of the litigation as evidenced by the filings on the docket.  *See id*., at 554.  And there was no inappropriate "lumping" of time entries under one total.  For example, it was not necessary for counsel to detail each email sent or read or phone call dialed or received while

---

[13] Christina Colosimo was acting as counsel for Dr. Bouchard.  *See* Doc. 88-1, p. 3.

corresponding with two other attorneys representing two doctors whose depositions needed to be scheduled; it is sufficient that counsel documented that all these communications took 1.5 hours. *See also* Doc. 93-1 through 93-5 (email correspondence between Salsbury, Gilbert, and counsel for Drs. Amanambu and Bouchard dated October 6, 2015, referencing phone calls made that day in an effort to schedule the doctors' depositions).

### c. Clerical and administrative work

Gilbert identifies five entries dated after September 15, 2015, that he alleges are for clerical or administrative work and, therefore, are not compensable. Doc. 134, p. 11; Doc. 134-5 (list of entries). He characterizes these entries as "drafting transmittal letters, coordinating documents and exhibits, and organizing physical files." Doc. 134, p. 11.

> "[C]lerical or secretarial tasks ought not to be billed at lawyers' rates, even if a lawyer performs them." *Cleveland Area Bd. of Realtors*, 965 F.Supp. at 1022 (deducting 2% from the amount of the fee request for billing of clerical and secretarial tasks at attorney rates). "However, activities such as filing a complaint, filing service requests, and filing return-of-service forms are clerical tasks that may be considered sufficiently 'legal work' to permit compensation, although any compensation would be at a lesser rate." *Rodriguez v. Astrue*, No. 3:11–CV–398, 2012 WL 2905928, at *3 (N.D.Ohio July 16, 2012).

*State Farm*, 2013 WL 5442302 at *4. This is "especially appropriate where, like here, [a] small firm[] [is] involved." *Howe*, 2016 WL 916701, at *15, n.22.

The undersigned concludes that a few entries include clerical tasks that are not compensable and/or some tasks that would be compensable at a reduced, non-attorney rate. *See, e.g.*, Doc. 131-2, p. 29 (10/2/2015, law clerk e-filing motion, billed $50); p. 27 (9/22/2015, attorney Pisanelli emailing counsel to set deposition date, reading email from plaintiff's former employer stating that employment records will be sent, billed $150). Rather than taking a line by line approach, the undersigned concludes that a small percentage reduction of the lodestar amount, 1%, is appropriate for the entries in question. *See State Farm*, 2013 WL 5442302, at *4

12

(taking a 1% deduction from the lodestar amount for very small instances of billing for clerical tasks).

### d. Time spent fixing defendant's counsels' own errors

Gilbert argues that 9 entries in the invoices dated after September 15, 2015, reflect time defendant's counsel spent fixing their own errors. Doc. 134, p. 11; Doc. 134-6.

Erroneous filling of exhibits. Gilbert contends that defendant's counsel incorrectly filed exhibits to defendant's motion for summary judgment; refiled these exhibits correctly; and included charges for correcting the error in the invoices, as follows:

| 10/27/2015 | 3 | $300.00 | (LC) address Opposing Counsel's issue without filing of the entire transcript with MSJ and any other citation issues (3. 0) |
| 11/2/2015 | 2 | $300.00 | (BT) prepare Motion for Substitution for Exhibits for Summary Judgment (2.0) |
| 11/3/2015 | 1 | $150.00 | (BT) arrange Substitution of Summary Judgment exhibits (1.0) |

Total: $750.00

Doc. 134, pp. 11-12; Doc. 134-6; *see also* Doc. 131-2, pp. 32-33 (invoices).

The undersigned agrees with Gilbert's recitation of events (*see* Doc. 106), that Salsbury's firm billed for correcting its own error, i.e., having incorrectly submitted exhibits, and that this activity is not chargeable to Gilbert. Thus, the fee award should be reduced by $750, which represents the cost of the total number of hours spent correcting this error.

Motion for Rule 11 Sanctions: Gilbert also objects to Salsbury's request for fees related to defendant's motion for sanctions pursuant to Fed. R. Civ. P. 11, which the Court denied as moot after explaining that defendant's counsel failed to comply with Rule 11's safe harbor provision. Doc. 134, p. 11. To recap: defendant filed a motion for order finding that Gilbert violated Fed. R. Civ. P. 11(b) on October 5, 2015. Doc. 90. The Court denied defendant's

motion on November 23, 2015. Doc. 112. Gilbert identifies the following items in the invoices related to defendant's unsuccessful Rule 11 motion:

| Date | Time | Amount | Description |
|---|---|---|---|
| 9/24/2015 | 3 | $690.00 | (SS) tel. conf. w/STNA Mercedes Jones (n/c); prepare and file supplemental memo supporting Foundations opposition to depose EEOC entitlement to an award of attorney fees (1. 0); research cases to support motion for award of attorney fees from plaintiff and her lawyer (2.0) |
| 9/30/2015 | 4.25 | $425.00 | (LC) assist w/additional research recovery of attorney fees (4.25) |
| 10/2/2015 | 5 | $500.00 | (LC) research potential avenues to recover fees from Opposing Counsel (FRCP Rule 11, 28 USC 1927, 42 USC 2000e-5) (5.0) |
| 10/5/2015 | 5.25 | $1,207.50 | (SS) prepare Motion and supporting memorandum of law requesting that Court award Foundations Rule 11 Sanctions against Carter's counsel (5.25) |
| 10/8/2015 | 6 | $1,380.00 | (SS) conduct legal research of all statutory bases for award of fees against Carter and her Attorney for use in motion for award of fees: Civil Rule 11 & 54; 28 U;S.C. § 1927; 42 U.S.C. § 2000e-5; and 42 U.S.C. § 122059 (4.50); prepare memo for client evaluating Carter claim, defenses; summary judgment & request for award of fees (1.5) |
| 10/16/2015 | 1.75 | $402.50 | (SS) review Carter 10/15 Motion to delay ruling on Hickory Ridge Motion for Sanctions and begin work on memo opposing delay (.50); review court 10/16 Order granting delay (n/c); revise memorandum to one requesting court to clarify that delay does not extend Rule 11 21-day safe harbor period (1.25) |

Doc. 134-6; Doc. 134, p. 11.

The undersigned agrees that Defendant should not be awarded fees for its unsuccessful Rule 11 motion, which the Court found that Salsbury filed without complying with the Rule's

14

safe harbor provision. Accordingly, time spent drafting the Rule 11 motion will not be included in the fee award. As indicated above, counsel spent 5.25 hours preparing the Rule 11 motion on October 5 and 1.75 hours on October 16, totaling $1,610.00. The fee award will thus be reduced by $1,610.

The time counsel spent researching fee recovery based on Rule 11, as well as other, statutory grounds, will be discussed in more detail directly below.

### e. Excessive billing

Gilbert also objects, in general, to the time defendant's counsel spent on recovering a fee award. Doc. 134, p. 9; Doc. 134-3 (Gilbert's list of all entries in the invoices for time spent on sanctions). He relies on case law setting forth the general rule that recovery of fees should be capped at 3%, but this authority has been abrogated. *See The Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 725 (6th Cir. 2016) (abrogating the attorney fee cap rule announced in *Coulter v. State of Tennessee*, 805 F.2d 146 (6th Cir. 1986)). Instead, a court simply considers the reasonableness of the fees requested. *Id.*

Gilbert alleges that the fees incurred by defendant in connection with its request for a fee award were not caused by his vexatious multiplication of the proceedings. Doc. 134, p. 9. The undersigned disagrees. Had there been no vexatious multiplication of the proceedings by Gilbert there would have been no cause for defendant to seek (and receive) a Court Order finding that sanctions are warranted or to file a brief setting forth and documenting the fees and costs requested. Gilbert provides no more specifics regarding his objection to the amount of time defendant's counsel spent on the fee award issue beyond reproducing defendant's invoiced entries detailing the time spent. Doc. 134-3.

On September 24 and 30, 2015, defendant's counsel billed 6.25 hours for researching fee recovery possibilities. On October 2, the law clerk researched "potential avenues" for fee

15

recovery based on Rule 11 and two other statutes for 5 hours.  On October 8, three days *after* defendant filed its initial Rule 11 motion, Salsbury again researched fees recovery pursuant to Rule 11 and various statutes for 4.5 hours.  This equals 15.75 hours just researching fee recovery possibilities from September 15 to October 8, including, but not limited to, fees based on Rule 11.

Defendant's counsel continued to research the attorney fee issue.  Counsel researched a "motion for sanctions" on November 19 (5 hours total) and spent 9 hours researching the issue between November 20 and 23.  This equals 29.75 hours spent *just researching* the recovery of fees.[14]

The amount of time Defendant's counsel spent drafting, creating affidavits, generating invoices, and responding to Gilbert's opposition brief on the fee recovery issue is around 48.75 hours.  Doc. 134-3; Doc. 131-2, pp. 34-37; Doc. 131-1.  Thus, defendant's counsel billed at least 29.75 hours for researching and 48.75 hours for preparing briefs, for a total of 78.5 hours, all on pursuing a fee award.  The undersigned finds that this amount of time spent on the fee award is excessive.  Accordingly, the undersigned concludes that the lodestar amount should be reduced by 30%.[15]

### 3. Summary of deductions

The amount of attorney fees invoiced after September 15, 2015, is $39,647.50.  As explained above, the undersigned applies the following deductions:

---

[14] Counsel also spent 3 hours researching fee recovery pursuant to Rule 68 on September 8, 2015.  Doc. 131-2, p. 22.

[15] Attorney Thompson and the law clerk did a fair amount of the billed work regarding the attorney fee issue.  The 30% reduction, therefore, also remedies the slightly higher billing rate reflected in the invoices for these two, as discussed above in the section regarding reasonable rates.

Time spent fixing Defense counsel's own errors:
    Erroneous filing of exhibits:          $750.00
    Motion for Rule 11 sanctions        <u>$1,610.00</u>
                                   $2,360.00

$39,647.50 - $2,360.00 = $37,287.50

Time spent on the fee award      (-) 30% ($11,186.25) = $26,101.25
Clerical and administrative work   (-)  1% ($261.00) = $25,840.25

<u>Total fee award (lodestar amount):</u>   $25,840.25

### C. Costs

The invoices list a total of $155.07 in costs incurred after September 15, 2015, in this case. *See* Doc. 131-2, pp. 32, 38.[16] Gilbert complains that Salsbury does not identify who a $55.07 witness fee, incurred on October 6, 2015, was paid to. Doc. 134, p. 15. But as Gilbert is well aware, on October 2, 2015, the undersigned ordered defendant to tender $55.07 to Dr. Amanambu for his appearance at his deposition. Doc. 89, p. 4. In short, Gilbert does not have a valid objection that the $55.07 fee was improperly invoiced on October 6. Instead, he finds fault with the invoices for not specifying that it was paid to Dr. Amanambu. Gilbert's complaint is not persuasive.

Although Gilbert also complains that the depositions of Drs. Amanambu and Bouchard were unnecessary (Doc. 134, p. 14), the undersigned again reminds Gilbert that he chose to press on with this case after he knew or should have known it was time-barred. And it was he who advised the Court and defendant that he intended to rely on live testimony at trial from Drs. Amanambu and Bouchard as fact witnesses in this case. *See* Doc. 45 (plaintiff's notice of filing expert reports of Drs. Amanambu and Bouchard); Doc. 63 (plaintiff's notice that she changed her position and intends to use Drs. Amanambu and Bouchard as fact witnesses, not experts).

---

[16] $1,123.50 in costs was related to plaintiff's deposition, which was taken on August 24, 2015. Doc. 131-2, p. 38. Because her deposition occurred before September 15, 2015, defendant is not entitled to recover these costs. *See Garner*, 554 F.3d at 646.

Accordingly, it was not "unnecessary" for defendants to depose Drs. Amanambu and Bouchard, plaintiff's treating physicians, when plaintiff's Complaint alleged she was discriminated against on the basis of her physical disability. Defendant is entitled to the costs incurred after September 15, 2015: $155.07.

## IV. Conclusion

For the reasons stated above, the undersigned finds that $25,840.25 in attorney fees and $155.07 in costs, for a total of $25,995.32 is a reasonable amount to award in favor of defendant against plaintiff's counsel and hereby **ORDERS** plaintiff's counsel Edward L. Gilbert to pay that amount to defendant Hickory Healthcare Inc. on or before May 31, 2017.

**IT IS SO ORDERED.**

Dated: May 3, 2017

Kathleen B. Burke
United States Magistrate Judge